[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 28, 2003
THOMAS K. KAHN
CLERK

No. 02-11947

_____

D. C. Docket No. 93-00358 CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARRELL B. GRESHAM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 28, 2003)**

Before EDMONDSON, Chief Judge, BARKETT and COX, Circuit Judges.

COX, Circuit Judge:

Darrell B. Gresham appeals the sentence imposed upon revocation of his supervised release. Following the revocation of his supervised release, the district court sentenced Gresham to two years imprisonment to be followed by three years of supervised release. We conclude that the district court committed plain error by applying a statute that was not in effect at the time of Gresham's underlying offenses – 18 U.S.C. § 3583(h). However, the error was harmless as Gresham's sentence is not contrary to the applicable statute. We hold that under 18 U.S.C. § 3583(e)(3), the applicable statute, a defendant is not entitled to credit for time previously served on supervised release and therefore that the aggregate of multiple supervised release terms may exceed the maximum length of supervised release attached to the underlying offense.

## I. BACKGROUND

Gresham was convicted on his plea of guilty for five counts of bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). Gresham committed the fifth bank robbery on July 30, 1993. On June 13, 1994, the court sentenced Gresham to 87 months in prison, to be followed by 60 months of supervised release.[1] Five years of

---

[1] We interpret the sentence as having been imposed on each count, with all sentences to run concurrently.

supervised release was the maximum to which Gresham could be sentenced under 18 U.S.C. § 3583(b)(1), as an armed robbery conviction is a Class B felony.

Gresham served his prison time and 2 years and 38 days of his supervised release before his supervised release was revoked for committing forgery and failing to pay restitution. At Gresham's post-revocation sentencing hearing, the term of supervised release that could be imposed following his reimprisonment was the subject of some debate and confusion. The district court queried the probation officer, the prosecutor, and defense counsel as to how to interpret § 3583(h). The probation officer asserted that the district court should give Gresham credit for pre-revocation time served on supervised release when calculating Gresham's post-revocation sentence. In other words, the court should subtract the time served on supervised release (roughly two years) from the maximum term of supervised release that could have been imposed for Gresham's original offense (five years) and the remaining number (roughly three years) is what the district court had left to sentence in the form of either prison or supervised release or a combination of the two. The prosecutor argued that the district court should subtract the amount of prison time it was imposing (two years) from the amount of supervised release that Gresham could have received for the original offense (five years) and whatever was left over (three years), was available to impose as supervised release. Gresham's counsel did not

offer an interpretation, but did mention that there has been debate over the meaning of the section.

After polling those present, the district court sentenced Gresham to twenty-four months in prison, to be followed by thirty-six months of supervised release. The district court noted that the law governing § 3583 was very confusing. The district court told counsel "if you all go back and read your book and say, oh, you couldn't [sentence Gresham to three years supervised release], you could only do two, I'll adjust that." (R. 10 at 24.) The district court did not elicit objections to the sentence following the imposition of sentence, but neither party objected to the district court's announced intention to apply § 3583(h) to determine the sentence, and both parties had been afforded an opportunity to express an opinion on what sentence the law permitted. Neither party submitted objections after the hearing, and judgment was entered.

## II. ISSUE ON APPEAL

We must decide whether a defendant whose supervised release is revoked is entitled to credit for time served on pre-revocation supervised release when the district court is calculating the post-revocation term of supervised release in a case where the underlying offenses were committed prior to September 13, 1994, the effective date of 18 U.S.C. § 3583(h).

4

### III. CONTENTIONS OF THE PARTIES

Gresham contends that when the district court calculated the amount of post-revocation supervised release to which he could be sentenced, he should have been credited for the pre-revocation time he had served. Gresham reaches this conclusion based on the language in § 3583(b), which states that "[e]xcept as otherwise provided, the authorized terms of supervised release are – (1) for a Class A or Class B felony, not more than five years." 18 U.S.C. § 3583(b)(1). Armed robbery is a class B felony; therefore, Gresham argues, he can be subject to not more than five years of supervised release. Gresham contends that no matter how many times he violates his supervised release, the district court cannot impose multiple terms of supervised release that, when added together, exceed the maximum length of supervised release attached by statute to the underlying offense. Gresham asserts that if we give the word "term" its ordinary meaning, then we will see that it means "limit," "boundary," or "end." Thus, the aggregate of multiple terms of supervised release for a Class B felony cannot exceed five years. To read the statute any other way, Gresham argues, would be to defy the plain meaning of the word "term."

Finally, Gresham urges us to apply the rule of lenity, which "directs [this court] to apply the lesser penalty when a statute presents an ambiguous choice between two

5

punishments," *United States v. Trout*, 68 F.3d 1276, 1280 (11th Cir. 1995), and find that § 3583 allows no more than a total of five years of supervised release.

The Government responds, first, by asserting that because Gresham did not object to the sentence in the district court, we can only review his sentence for plain error. Next, the Government acknowledges that the district court improperly sentenced Gresham under § 3583(h) – a section not in effect at the time of Gresham's offenses. But, the Government argues, Gresham cannot establish plain error because the sentence the district court imposed was a permissible one under the applicable section, § 3583(e)(3).

Finally, the Government asserts that even if this court rejects the Government's proposed statutory interpretation, the district court's error was not plain as two circuits have concluded that the aggregate of supervised release terms may exceed the maximum term set forth in § 3583(b), there was no binding caselaw in this circuit at the time the district court imposed the sentence, and no court has adopted the statutory interpretation that Gresham is now urging this court to adopt.

## IV. STANDARD OF REVIEW

Gresham objects to the district court's interpretation of § 3583 for the first time on appeal. Thus, we review for plain error. Under the plain error standard, Gresham must show that: (1) an error occurred; (2) the error was plain; (3) it affected his

6

substantial rights; and (4) it seriously affected the fairness of the judicial proceedings. *United States v. Humphrey,* 164 F.3d 585, 588 n.3 (11th Cir. 1999).

## V.  DISCUSSION

In sentencing Gresham, the district court clearly utilized § 3583(h).[2]   That section became effective on September 13, 1994, and is not retroactively applicable to defendants who committed their underlying offense prior to September 13, 1994. *Johnson v. United States*, 529 U.S. 694, 702, 120 S. Ct. 1795, 1802 (2000).  Gresham committed the last bank robbery on June 30, 1993, more than a year before § 3583(h) became effective.  Thus, the application of § 3583(h) was contrary to the Supreme Court's holding in *Johnson* (which preceded Gresham's sentencing) and therefore the application was plain error.

In order to determine whether the district court's plain error affected Gresham's substantial rights, we must decide whether the term of supervised release that the district court imposed exceeds that permissible under the applicable statute.  Because

---

[2]  18 U.S.C. §3583(h) states:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

Gresham committed his offenses prior to September 13, 1994, the district court should have utilized § 3583(e)(3) when determining Gresham's post-revocation sentence. It is to this section that we now turn.

Section 3583(e)(3) states that a district court may

(3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release, . . . except that a person whose term is revoked under this paragraph may not be required to serve more than 3 years in prison if the offense for which the person was convicted was a class B felony . . .

18 U.S.C. § 3583(e)(3) (1993). In *Johnson v. United States*, 529 U.S. 694, 120 S. Ct. 1795 (2000), the Supreme Court held that while it is not clear from the text of § 3583(e)(3), the statute, when read as a whole, authorizes a district court to impose a period of supervised release following reimprisonment after the revocation of supervised release. *Id.* at 713, 120 S. Ct. at 1808. Neither does § 3583(e)(3) explicitly answer the question we are confronted with: whether a defendant must receive credit for pre-revocation time served on supervised release. In this case, Gresham served two years and thirty-eight days of supervised release prior to the district court revoking his release. Thus, if we interpret the statute as Gresham suggests, we would take the maximum term of supervised release that § 3583(b)

8

permits – five years – and subtract two years and thirty-eight days (5 years - 2 years, 38 days = 2 years, 327 days). The district court would then be able to sentence Gresham to no more than the three years reimprisonment set forth in § 3583(e)(3) combined with no more than two years and three hundred twenty-seven days of supervised release.

To support his interpretation, Gresham directs us to three opinions from other circuits. In these cases, *United States v. Merced*, 263 F.3d 34 (2d Cir. 2001); *United States v. Brings Plenty*, 188 F.3d 1051 (8th Cir. 1999); *United States v. Beals*, 87 F.3d 854 (7th Cir. 1996), the Second, Eighth, and Seventh Circuits concluded that all post-revocation prison sentences relating to the same offense should be aggregated and subtracted from the limit on reimprisonment set forth in § 3583(e)(3) when calculating how much reimprisonment time a defendant may be required to serve. *Merced*, 263 F.3d at 37; *Brings Plenty*, 188 F.3d at 1053; *Beals*, 87 F.3d at 857-58. Gresham urges us to draw an analogy between reimprisonment and more supervised release and find that supervised release terms, in the aggregate, cannot exceed the limit set forth in § 3583(b). We reject Gresham's analogy because we do not construe § 3583(b) to require that defendants receive credit for time served on pre-revocation supervised release.

9

We begin our analysis with *United States v. Williams*, 2 F.3d 363 (11th Cir. 1993). *Williams* addressed the issue of whether § 3583(e)(3) permitted a district court to impose post-revocation supervised release. The panel in *Williams* was bound by this circuit's prior decision in *United States v. Tatum*, 998 F.2d 893 (11th Cir. 1993). The *Tatum* court held that § 3583(e)(3) did not authorize imposition of post-revocation supervised release. 998 F.3d at 895-96. The *Williams* court respectfully disagreed with *Tatum* and stated that the phrase "revoke supervised release" in § 3583(e)(3) means to cancel the supervised release status of a defendant, not to extinguish the underlying term of supervised release. 2 F.3d at 365. Thus, the underlying supervised release, although "called back," would survive and be at the sentencing judge's disposal. *Id.* The court noted that the plain language of § 3583(e)(3) supports such reasoning. *Id.* The statute expressly recognizes the continuation of a supervised release term when it states that a sentencing judge may imprison a defendant for "*all or part* of the term of supervised release." 18 U.S.C. § 3583(e)(3) (emphasis added). This language implies that a judge may sentence a defendant to part reimprisonment and part supervised release that equals "the term of supervised release," which in Gresham's case was five years. *Id.*, *see also* § 3583(e)(3). The *Williams* court concluded that "both common sense and the actual language [of § 3583(e)(3) suggest that Congress intended] to authorize a district court

to revoke a term of supervised release, imprison the person for part of that supervised release term, and order that the remainder of that supervised release term be served as supervised release." 2 F.3d at 365. Although the *Williams* panel unanimously disagreed with the *Tatum* decision, the *Williams* panel declined to seek en banc consideration because Congress was in the process of amending § 3583 to remedy the ambiguity. *Id.*

In *Johnson*, the Supreme Court vindicated the *Williams* panel's disagreement with *Tatum* by holding that district courts have the authority to impose post-revocation supervised release. *Johnson*, 529 U.S. at 713, 120 S. Ct. at 1807.

While the *Johnson* court was not presented with the issue of crediting defendants for time served on pre-revocation supervised release, the Court indicated an answer. The Court stated, "unlike a 'terminated' order of supervised release, one that is 'revoked' continues to have some effect. And since it continues in some sense after revocation even when part of it is served in prison, why can the balance of it not remain effective as a term of supervised release when the reincarceration is over?" *Johnson*, 529 U.S. at 705-06, 120 S. Ct. at 1803.

Implicit in both the *Williams* panel's analysis and the Supreme Court's analysis in *Johnson* is the fact that the supervised release term starts anew once it is revoked. Neither court contemplated a defendant receiving credit for prior time served.

11

While we agree with the *Williams* panel's analysis of the language of § 3583(e), Congressional intent also informs our interpretation. In *Johnson*, the Supreme Court stated:

> The congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty. The Senate Report was quite explicit about this, stating that the goal of supervised release is "to ease the defendant's transition into the community" . . .. Congress aimed, then, to use the district court's discretionary judgment to allocate supervision to those releasees who needed it most. . . . A violation of the terms of supervised release tends to confirm the judgment that help was necessary, and if any prisoner might profit from the decompression stage of supervised release, no prisoner needs it more than one who has already tried liberty and failed.

529 U.S 694, 708-09, 120 S. Ct. 1795, 1805 (2000) (internal citations omitted). If Congress intended to have courts utilize supervised release as a transitional tool, then it seems counterintuitive that Congress would also seek to credit those most in need of help in making the transition to freedom for a failed attempt at using that tool.

The Sixth and Ninth Circuits support our conclusion. In *United States v. Marlow*, 278 F.3d 581 (6th Cir. 2002), the Sixth Circuit held that the aggregate of a defendant's time served on pre-revocation and post-revocation supervised release could exceed the length of supervised release contemplated in the original order of supervision. *Id.* at 588.

In *United States v. Cade*, 236 F.3d 463 (9th Cir. 2000),[3] the defendant violated his supervised release twice; therefore, he had served parts of two supervised release terms before being sentenced to a new, third supervised release term. Cade argued that he should receive credit for pre-revocation time served on supervised release because failure to credit him would allow the district court to exceed the statutory limit set forth in § 3583(b). *Id.* at 467. The Ninth Circuit held that Cade was not entitled to credit for time served on supervised release prior to revocation. *Id.* at 468. The court reasoned that the plain language § 3583 "neither limits the *number of terms* of supervised release that a defendant can be ordered to serve as a result of violating conditions of release, nor places a cap on the *aggregate amount of time* on supervised release that a defendant might serve because of repeated [supervised release violations]." *Id.* at 466 (emphasis in original). Basing its decision on the Supreme Court's conclusion about Congressional intent with regard to supervised release, the *Cade* court held that § 3583 imposes no "statutory maximum" on the aggregate amount of time a defendant may be required to serve on supervised release for multiple violations of the conditions of supervised release. *Id.* at 467.

---

[3] While this case discusses § 3583(h), its decision regarding aggregate supervised release terms expressly dealt only with § 3583(e)(3).

*Cade* is distinguishable from Gresham's case because Cade was a repeat supervised release violator and Gresham has only violated his supervised release once. However, we think that the conclusion is the same whether a defendant has violated his supervised release once or violated it several times: Defendants who violate the conditions of their supervised release are the defendants most in need of more supervised release.

## VI. CONCLUSION

For the foregoing reasons, we conclude that both the language of the statute and the intent of Congress dictate that a defendant is not entitled to credit for pre-revocation time served on supervised release. We therefore hold that the aggregate of pre-revocation and post-revocation supervised release terms may exceed the maximum length of supervised release that § 3583(b) dictates should attach to the underlying offense. Because the district court's sentence of two years of reimprisonment to be followed by three years of supervised release is permitted by the applicable statutes, we affirm Gresham's sentence.

AFFIRMED.