[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 22, 2010
JOHN LEY
CLERK

No. 10-10939
Non-Argument Calendar

_____

D.C. Docket No. 1:92-cr-00533-KMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS MIGUEL LATOUR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 22, 2010)

Before CARNES, HULL and FAY, Circuit Judges.

PER CURIAM:

After pleading guilty in 1993 to one count of conspiracy to possess cocaine

with intent to distribute, Carlos Miguel Latour was sentenced to 164 months

imprisonment, to be followed by 5 years of supervised release. His supervised release commenced on July 2, 2004. Approximately one month before it was to end, the United States Probation Office filed a petition alleging that Latour had violated the terms of his release by testing positive for illegal narcotics on three occasions during May and June of 2009. After a hearing in July 2009, the district court revoked Latour's supervised release, "committed [him] to the custody of the Bureau of Prisons for time served,"[1] and imposed a new period of supervised release to last for 12 months. As part of its judgment, the district court required that Latour participate in an approved drug treatment program.

Within six months Latour was back before the district court again. On December 31, 2009, Latour's probation officer petitioned the court to issue a warrant for Latour and revoke his supervised release. The petition alleged that during December Latour had committed three violations of a special condition in his supervised release that required him to participate in an approved drug treatment program. Specifically, the first alleged violation was that Latour "was unsuccessfully discharged from Spectrum Dade Chase, [a] residential drug treatment program, due to violating the rules of the program." The second and

---

[1] The court added this language to its "Amended Judgment Upon Revocation," which became the final judgment, likely because Latour's initial five-year term of supervised release had ended by the time the first revocation hearing was held on July 28, 2009.

2

third alleged violations were that Latour had been absent from two scheduled appointments at the Advocate, an outpatient drug treatment program.

At his revocation hearing, Latour contested the first violation but admitted to missing the two appointments that were the subjects of the second and third violations. After considering the evidence, the district court found Latour guilty of all three violations, revoked his sentence of supervised release, and sentenced him to 14 months imprisonment to be followed by a new term of 46 months of supervised release. Latour contends that the district court should not have found him guilty of any of the violations and that it erred in failing to consider a substance abuse treatment program as an alternative to incarceration.

I.

We review only for abuse of discretion the district court's decision that a defendant violated the terms of supervised release. United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). We are bound by the district court's findings of fact unless they are clearly erroneous. United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993). A district court may revoke a defendant's term of supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of it. 18 U.S.C. § 3583(e)(3).

As for the first violation, Latour argued at the hearing that he was discharged from the Spectrum drug abuse program not because he violated the program's rules but because his parole officer had ordered the discharge. Latour presented some evidence at the hearing suggesting that the decision to discharge him from Spectrum was a collaborative one between the drug treatment program and the Department of Probation, but that was not inconsistent with the considerable evidence that the reason Latour was discharged is that he was breaking Spectrum's rules.

Latour himself admitted to possessing a cell phone in violation of Spectrum's rules. More importantly, on November 30, 2009, Latour twice failed to comply with Spectrum's procedures for drug testing. A therapist assigned to Latour began to suspect that he was submitting someone else's urine as his own. At the third testing that day, Latour finally followed the proper procedures and provided a legitimate sample, which tested positive for the presence of cocaine. Because Spectrum is a residential facility, the program supervisors determined that Latour must be using drugs at the facility itself, which constituted grounds for an automatic discharge under Spectrum's rules.

Latour's pattern of rule-breaking led to a phone conversation on December 1, 2009, between a Spectrum supervisor and Latour's probation officer. At the

4

revocation hearing, Latour's therapist testified that under federal regulations, the probation office must be informed before a federal client can be discharged without successfully completing the program, regardless of whether the program's own rules require discharge. Spectrum's record of this December 1st telephone call noted that the probation office "agreed" that Latour should be discharged and instructed Latour to report to his probation officer the following day.

Based on this evidence, the district court did not clearly err in finding Latour guilty of the first alleged violation of the terms of his supervised release. Ample evidence supports the court's finding that the reason for Latour's discharge was that he broke the Spectrum Program's rules.[2]

As for the second and third violations, Latour admitted to them at the outset of his revocation hearing, and he did not object when the district court adjudicated him guilty of those violations based on his own admissions. Latour later testified at the hearing that he had valid explanations for why he had missed his scheduled appointments at the Advocate Program. When the district court reminded Latour that he had already admitted that those violations had occurred, Latour responded

---

[2]We do not address Latour's assertion that 18 U.S.C. § 3583(d) requires that the government provide evidence of independent lab results confirming a positive drug test. The evidence supported the district court's finding that Latour was discharged from the residential drug treatment program because he had violated its rules, regardless of the results of his drug test.

that he was not contesting the violations but was arguing only about their "substantiality." There was no error as to those two violations.

## II.

Finally, Latour argues that the district court failed to consider the availability of a substance abuse treatment program as an alternative to incarceration. He points to 18 U.S.C. § 3583(d), which states that a court "shall consider whether the availability of appropriate substance abuse treatment programs" warrants an exception to the mandatory revocation of supervised release required under 18 U.S.C. § 3583(g). The district court erred, Latour asserts, in failing to make any findings that justified or supported its decision to impose additional prison time and in failing to discuss his rehabilitative needs and explain why a sentence at the top of the guidelines range was appropriate.

Because Latour did not raise an objection to the procedural reasonableness of his sentence, we review only for plain error. See United States v. Gresham 325 F.3d 1262, 1265 (11th Cir. 2003). "Under the plain error standard, [a defendant] must show that: (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." Id. (citation omitted).

6

First, it is not plain that 18 U.S.C. § 3583(d) is even applicable here. The government did not seek mandatory revocation pursuant to 18 U.S.C. § 3583(g). Instead, it alleged that Latour committed three violations of the terms of his supervised release, all of which concerned his failure to participate in an approved drug treatment program. Moreover, the court never found that any of the prerequisites for mandatory revocation existed. Because mandatory revocation was not sought in this case, it is not plain that the district court was required to consider substance abuse treatment as an alternative to incarceration.

Second, Latour's argument fails to satisfy the prejudice prong of our plain error analysis. To show that an error has affected the defendant's substantial rights "almost always requires that the error 'must have affected the outcome of the district court proceedings.'" United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005) (quoting United States v. Cotton, 535 U.S. 625, 632, 122 S.Ct. 1781, 1786 (2002)). The defendant's burden here is a heavy one; he must demonstrate a "reasonable probability of a different result" but for the error. Id. Viewing the facts in a light most favorable to Latour, we do not find that he meets this burden. His supervised release had already been revoked once before, and we cannot say that the district court's consideration of substance abuse treatment

programs or other alternatives to incarceration would have changed the sentence it chose.

**AFFIRMED.**