[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16191
Non-Argument Calendar

_____

D.C. Docket No. 5:11-cr-00020-WTH-TBS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEMUNTRAY D. COX,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 21, 2013)

Before PRYOR, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Demuntray Cox appeals his convictions for possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e), and possession of marijuana, in violation of 21 U.S.C. § 844(a).  On appeal, Cox argues that (1) the evidence against him should have been suppressed because the initial stop was illegal and this tainted any statements he made after his arrest, and (2) at trial the district court improperly admitted a police officer's testimony identifying his voice and explaining terminology used in a recorded jailhouse phone call.  For the reasons that follow, we affirm.

I.    Background

Cox was indicted for possession of ammunition and possession of marijuana after police conducted a traffic stop, observed marijuana in the car, and found a loaded gun in his pants during a search.  Cox moved to suppress the evidence, arguing that there was no reasonable suspicion or probable cause to arrest him, he was not given *Miranda*[1] warnings, and even if he did receive *Miranda* warnings, any statements he made were tainted by the illegal arrest.

At the suppression hearing, Deputy Trevor Fitzgerald testified as follows: He initiated a traffic stop of a vehicle in which Cox was a passenger based on his belief that the car's windows were unlawfully tinted.  As he followed the car, he observed someone throw a plastic baggie with a green leafy substance from the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

passenger window.  When the car stopped, he approached the passenger side of the car and observed a marijuana bud between Cox's legs.  He removed Cox from the car, handcuffed him, and placed him under arrest.  He then searched Cox and found a loaded firearm.  Field tests confirmed that the baggie and bud contained marijuana.  After receiving *Miranda* warnings, Cox admitted that the drugs and gun were his.  Deputy Douglas Watts also testified at the suppression hearing and confirmed Fitzgerald's testimony about the stop and Cox's statements.

A magistrate judge recommended denying the motion to suppress, concluding that the initial stop was proper based on the tinted windows, the marijuana on the car seat was in plain view, and there was probable cause to arrest Cox.  Cox filed objections to the magistrate judge's recommendation, arguing that there was no evidence he knew the marijuana was in the car and thus his arrest was unlawful.  He also asserted that *Miranda* warnings did not cure the taint of the improper arrest.  The district court overruled the objections and denied Cox's motion to suppress, concluding that the initial stop was proper, the marijuana was in plain view, and thus there was probable cause to arrest and search Cox.  The district court noted that Cox had not challenged the initial stop as unlawful or argued that the marijuana was not in plain view.

At trial, the government admitted recorded jailhouse phone calls made under the personal identification number the jail assigned to Cox.  ATF Special Agent

3

DeWayne Krueger testified that he obtained the recordings and played them for Fitzgerald.  Fitzgerald testified that he had listened to the recordings the week before the trial and recognized Cox's voice.  Fitzgerald stated that he had known Cox in high school ten years earlier and could identify his voice.  Fitzgerald admitted that he had not spoken with Cox since high school until the day of the stop, he had only spoken with Cox for fifteen or thirty minutes that day, and he had not spoken with Cox since.  Cox objected to Fitzgerald's identification as lacking foundation, but the court overruled the objection.

The government played the recordings for the jury, in which the speaker identified as Cox stated the driver of the car "know why I had the green . . . . He told me to roll that . . . . When he seen um comin', he say toss it out."  Cox later stated "the only thang [he] was responsible for in there was the stick."  Fitzgerald testified that the term "stick" was slang for gun and "green" was slang for marijuana.

The jury convicted Cox on both counts of the indictment, and the district court sentenced him to 105 months' imprisonment.  This is Cox's appeal.

II.    Discussion

1. Motion to Suppress

Cox argues that there was no reasonable suspicion to stop the car in which he was a passenger, and that the tinted windows were a pretext to stop the car.  He

asserts that there was no evidence he knew the marijuana was in the car and thus his arrest was unlawful.  Finally, he argues that giving *Miranda* warnings did not cure the taint of the unlawful arrest.  The government contends that the issues are not properly before this court because Cox failed to challenge the magistrate judge's finding that the stop was lawful and that the drugs were in plain view.

Generally, we review the district court's factual findings on a motion to suppress only for clear error, but review its application of the law to those facts *de novo*.  *United States v. Ramirez–Chilel*, 289 F.3d 744, 748–49 (11th Cir. 2002).  When a defendant fails to make specific objections to a magistrate judge's report and recommendation, however, we deem challenges to those specific issues abandoned.  *See* Fed. R. Crim. P. 59(b)(2) (a defendant's failure to file specific written objections to a magistrate judge's report waives the defendant's right to further review of that issue).  Such claims are not subject to plain-error review.  *United States v. Lewis*, 492 F.3d 1219, 1221 (11th Cir. 2007) (*en banc*).

Upon review of the record, we agree with the government that Cox failed to preserve his arguments.  In the report, the magistrate judge found that police properly stopped the car for tinted windows and officers observed marijuana in plain view on the passenger's seat.  Thus, the magistrate judge concluded that Cox's arrest and the subsequent search were lawful.  In his objections to this report, Cox failed to challenge the initial stop or the finding that the drugs were in

plain view with any specificity.  Rather, Cox argued that there was no evidence he knew the marijuana was in the car.  Under our precedent, we decline to address arguments not raised in the objections to the magistrate judge's report, and Cox's lack of specificity in filing objections is fatal to his claims.  *See United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (requiring defendants to state objections with specificity, using clear and precise language).  Accordingly, because Cox did not properly challenge the magistrate judge's determination that the police conducted a lawful traffic stop during which they observed marijuana in plain view, the district court properly denied the motion to suppress.

2.  Evidentiary Issues

Cox argues that the district court erred by admitting (a) Fitzgerald's voice identification testimony, (b) the recorded jail house calls, and (c) Fitzgerald's testimony concerning slang terms heard during the calls.  In addition to asserting that the evidence was not admissible under any rule of evidence, Cox contends that the admission was more prejudicial than probative under Federal Rule of Evidence 403.

We review the district court's admission of evidence for abuse of discretion."  *United States v. Capers*, 708 F.3d 1286, 1305 (11th Cir.), *cert. denied* 2013 WL 2227240 (No. 12-10378) (Oct. 7, 2013) (internal quotation marks omitted).  Arguments not raised before the district court are subject to plain error

review. *United States v. Gresham,* 325 F.3d 1262, 1265 (11th Cir. 2003). To demonstrate plain error, Cox must show that: "(1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *Id.* Generally, "the trial judge has broad discretion in determining whether to allow a recording to be played before the jury." *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977).[2] Although Cox objected to Fitzgerald's identification and testimony, preserving these issues for appellate review, he failed to challenge the admission of the tape on authenticity grounds. Nor did he argue that the admission of the evidence violated Rule 403. We therefore review these arguments for plain error.

Regardless of which standard of review applies, evidentiary challenges are also subject to harmless error review. *See United States v. Ghertler*, 605 F.3d 1256, 1270 (11th Cir. 2010) (discussing harmless error in the admission of voice identification). Reversible error occurs only when the evidentiary ruling is not harmless, meaning that there is a reasonable likelihood that the error affected the defendant's substantial rights. *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999). We determine whether error was harmless "by weighing the record as a whole . . . examining the facts, the trial context of the error, and the prejudice

---

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

created thereby as juxtaposed against the strength of the evidence of [the] defendant's guilt." *Id.* (citation and internal quotation marks omitted).

### A. Voice Identification

Voice identification testimony can be admitted only after it is determined sufficient evidence supports a finding "the item is what the proponent claims it is." Fed. R. Evid. 901(a). A speaker's voice may be identified by opinion testimony "based on hearing the voice at any time under circumstances that connect it with the alleged speaker." *Id.* 901(b)(5). "Once a witness establishes familiarity with an identified voice, it is up to the jury to determine the weight to place on the witness's voice identification." *Brown v. City of Hialeah*, 30 F.3d 1433, 1437 (11th Cir. 1994).

Here, the testimony showed that Fitzgerald was familiar with Cox's voice from high school and from the day of the arrest. The jury determined that this familiarity was sufficient, and we find no reason to disagree.

Even assuming that this was error, however, we find the error harmless. In this case, the evidence against Cox was overwhelming. Cox admitted after arrest that the marijuana and ammunition were his. Fitzgerald testified that he saw someone throw a plastic baggie containing a leafy green substance from the passenger window, and he smelled marijuana in the car. Fitzgerald further stated that field tests confirmed the substances found in the passenger seat and the plastic

8

baggie were marijuana.  In light of this evidence, any error in the admission of Fitzgerald's voice identification was harmless.  Finally, because of this overwhelming evidence, Cox cannot show that the admission of Fitzgerald's testimony was unduly prejudicial under Rule 403.

### B. Terminology

The district court also permitted Fitzgerald to explain terminology heard on the recorded phone calls.  Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  We have held that, "[l]aw enforcement officers may testify as to the meaning of slang or code words." *United States v. Carrazana*, 921 F.2d 1557, 1567 (11th Cir. 1991) (citation omitted).

Here, Fitzgerald testified that the term "stick" referred to a gun and the term "green" meant marijuana.  Under our precedent, there was nothing improper about permitting Fitzgerald's testimony about the use of code words.

### C. Authenticity of the Recordings

Finally, Cox challenges the recordings on the grounds that the government failed to properly authenticate them.  As noted, Cox did not raise this issue at trial,

9

and thus we review for plain error. *Gresham*, 325 F.3d at 1265. The party introducing an audio tape into evidence has the burden of presenting sufficient evidence to show that a recording is an authentic reproduction of a conversation. *United States v. Sarro*, 742 F.2d 1286, 1292 (11th Cir. 1984). In order to authenticate a recording, the government ordinarily must show "(1) the competency of the operator; (2) the fidelity of the recording equipment; (3) the absence of material deletions, additions, or alterations in the relevant part of the tape; and (4) the identification of the relevant speakers." *Id.* If, however, "there is independent evidence of the accuracy of the tape recordings admitted at trial, we shall be extremely reluctant to disturb the trial court's decision even though at the time that decision was made the government had not carried its particularized burden of going forward." *Id.* (internal quotation marks omitted).

Here, the testimony at trial established that each inmate was assigned a personal identification number and that Cox's number was used to place the calls. Cox did not object to the admission of the recording for lack of authenticity, and we cannot conclude that there is any error here. Even if we were to find error, the admission of these calls was harmless in light of the overwhelming evidence and our admonition in *Sarro*.

For the foregoing reasons, we affirm Cox's convictions.

**AFFIRMED.**

10